UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 03 CR 981 |
| vs. | ) | |
| | ) | Judge Amy St. Eve |
| MAGID GLOVE AND SAFETY | ) | |
| MANUFACTURING CO. LLC | ) | |

## PLEA AGREEMENT

This plea agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, MAGID GLOVE AND SAFETY MANUFACTURING CO. LLC, by its authorized representative, SHELDON COHEN, and its attorney, ANN C. TIGHE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This plea agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in this case.

This plea agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this agreement.

1



By this plea agreement, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, and the defendant, Magid Glove and Safety Manufacturing Co. LLC, by its authorized representative, Sheldon Cohen, and its attorney, Ann C. Tighe, have agreed upon the following:

1. Defendant, by its authorized representative, acknowledges that it has been charged in the information in this case with mail fraud in violation of Title 18, United States Code, Section 1341.

2. Defendant's authorized representative has read the charge against defendant contained in the information.

3. Defendant's authorized representative fully understands the nature and elements of the crime with which defendant has been charged.

4. Defendant, by its authorized representative, will enter a voluntary plea of guilty to the information in this case.

5. Defendant, by its authorized representative, will plead guilty because it is in fact guilty of the charge contained in the information. In pleading guilty, defendant's authorized representative admits the following facts and that those facts establish defendant's guilt beyond a reasonable doubt.

   (a) From about September 1994 through about September 8, 1999, in the Northern District of Illinois and elsewhere, defendant through certain of its officers and employees devised and intended to devise a scheme to defraud its customers and obtain their

2

money by means of false and fraudulent pretenses and representations, well knowing the pretenses and representations would be and were false and fraudulent when its officers and employees made them.

(b) Defendant, an Illinois limited liability company with its principal executive offices, a factory and a warehouse at 2060 North Kolmar Avenue, Chicago, Illinois, manufactured, distributed and sold industrial work gloves and protective industrial clothing and safety items. During the scheme, defendant had approximately 13,000 customers, and a product line encompassing more than 20,000 items. Defendant's customers included private companies, state and local municipal government agencies, and several federal government agencies.

(c) Defendant had a bonus system for its employees based on profits. This bonus system became an incentive for certain employees to defraud defendant's customers by billing the customer for certain gloves ordered by the customer, while causing the customer to be shipped gloves that were lower in cost and quality. On multiple occasions during the scheme, some of defendant's salespeople fraudulently substituted product and over charged customers without the knowledge or consent of the customers.

(d) Certain of defendant's senior management knew of, approved of, and facilitated this continuing fraud on the customers. Some members of senior management counseled salespeople on which inferior gloves should be substituted for which gloves ordered by customers.

  (e)  Defendant used a billing form with a half-page carbon insert between the yellow billing copy and white packing list copy, which concealed the fact that the industrial work gloves defendant shipped were a substituted product different from the glove product a customer ordered.

  (f)  On February 17, 1999, in the Northern District of Illinois, for the purpose of executing its scheme and artifice to defraud and attempting to do so, defendant knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the direction thereon, a carton that contained four dozen gloves and four dozen safety goggles addressed to U.S. Postal Service, Rm. 50190, 433 W. Harrison, Chicago, IL 60607.

  6.  For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

  (a)  The applicable sentencing guidelines manual is the manual dated November 1, 1998.

  (b)  Under USSG § 2F1.1(a), the base offense level is six. Under USSG § 2F1.1(b(2), the offense level is increased by two levels because the offense involved more than minimal planning and a scheme to defraud more than one victim. A reasonable estimate of the loss or gain is not possible because it is impossible to identify all of the fraudulent transactions, to reasonably estimate the number of the fraudulent transactions, or to

reasonably estimate the average loss or gain from the fraudulent transactions. Thus, no offense level increase for the amount of loss is appropriate. Under U.S.S.G. § 8C2.4(a)(1) and (d), therefore, the base fine applicable to defendant is $10,000.

(c) Under U.S.S.G. § 8C2.5(a), the base culpability score is five points. Pursuant to U.S.S.G. § 8C2.5(b)(3)(A)(i), the culpability score is increased by three points, for a total of eight points, because the organization had 200 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was wilfully ignorant of the offense. Defendant has no prior criminal or civil adjudication based on similar misconduct. Defendant has fully cooperated and accepts responsibility for its criminal conduct, so, under U.S.S.G. § 8C2.5(g)(2), the parties subtract two culpability points. Thus, defendant's preliminary culpability score is six.

(d) With a culpability score of six, under U.S.S.G. § 8C2.6, the minimum fine multiplier is 1.2 and the maximum fine multiplier is 2.4. Thus, with a culpability score of six, the guideline fine range applicable to defendant is $12,000 to $24,000.

(e) The guideline fine range understates the seriousness of the offense because it does not take into account either the customers' loss or defendant's gain from the offense. Therefore, an upward departure from the guideline fine range is appropriate pursuant to USSC § 8C4.0. The parties agree that an upward departure to a fine of $150,000 is appropriate.

5

(f) The parties agree to waive a pre-sentence investigation and report by the United States Probation Office. The parties further agree to ask the Court to sentence immediately upon defendant entering its guilty plea. Defendant understands that this agreement to waive a pre-sentence investigation and report is not binding on the Court, and that the Court may order the Probation Office to conduct its own investigation or the Court may not agree to sentence the defendant immediately upon its entering its guilty plea.

(g) The defendant's authorized representative and its attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this agreement. Defendant, understands that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this agreement is not contingent upon the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the Court setting forth the disagreement as to the correct guidelines and their application. The validity of this agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw its plea on the basis of such corrections.

8. Defendant, by its authorized representative and its attorney, understands that as applicable to defendant the information to which it will plead guilty carries the following penalties:

    (a) A maximum fine of $500,000, or twice the gross gain or loss caused by the offense, whichever is greater, under 18 U.S.C. § 3571(c) and (d); and

    (b) A term of probation for defendant of one to five years, under 18 U.S.C. § 3561.

Therefore, the total potential sentence carried under the count to which defendant will plead guilty is a fine of $500,000 and five years probation, as well as restitution.

9. The defendant understands that in accord with 18 U.S.C. § 3013, upon the Court entering judgment of conviction, the Court will assess the defendant $400 on the charge to which it has pleaded guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $400 at the time of sentencing with a cashier's check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty it surrenders certain rights, including the following:

    (a) If defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the

government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve lay persons selected at random. Defendant's representative and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict defendant unless, after hearing all the evidence, the jury was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant's representative would be able to confront those government witnesses and its attorney would be able to cross-examine them. In turn, defendant's attorney could present witnesses and other evidence in its behalf. If the witnesses for defendant would not appear voluntarily, it could require the witnesses attendance through the subpoena power of the Court.

(e) Defendant understands that it has a right to have the charge set out in the information prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this agreement, defendant knowingly waives its right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that it has been prosecuted by way of information.

11. Defendant, by its authorized representative and its attorney, understands that by pleading guilty it is waiving all the rights set forth in the prior paragraph and the consequences of its waiver of those rights.

12. Defendant agrees that through its officers, employees and agents it will fully and truthfully cooperate with the government in any matter in which it is called upon to cooperate. Defendant understands that this cooperation agreement includes providing complete and truthful information in any investigation and pre-trial preparation, and complete and truthful testimony, if called upon to testify, before any federal grand jury and United States District Court proceeding, and any related civil administrative or court proceedings.

13. Defendant understands that the information and this plea agreement are matters of public record and may be disclosed to any person.

14. Defendant agrees that its obligations under this plea agreement survive any change in its corporate name, form or status.

15. Defendant understands that the United States Attorney's Office will fully apprize the Court of the nature, scope and extent of defendant's conduct regarding the charges against it, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16. As to restitution, the parties agree, pursuant to 18 U.S.C. § 3663A(c)(3), that determining complex issues of fact related to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. The parties agree to recommend that, as a condition of probation, the Court should order the defendant to donate work gloves or safety equipment with a value of $75,000 at defendant's current cost to an IRS-qualified charitable organization of defendant's choosing.

17. The parties agree that, prior to entering its guilty plea, defendant entered into a settlement agreement in <u>United States ex rel. Scott L. Kaplan v. Magid Mfg. Co., Inc. and Magid Glove & Supply Manufacturing Co., LLC</u>, No 98 C 7030 (N.D. IL), resolving all claims in that case. Pursuant to the settlement agreement, defendant has agreed to pay $719,000 to the United States and $281,000 to the State of Illinois, the amount of which reflects, among other things, the authority of the government to seek civil monetary penalties against defendant. The parties agree that defendant's compliance with the terms of that civil settlement agreement is material to this plea agreement, and that breach of the civil

settlement agreement by any party to this plea agreement constitutes a breach of this plea agreement.

18. At the time of sentencing, parties agree to jointly recommend a sentence of one year of probation and to make a joint motion for an upward departure to a fine of $150,000 on the grounds and for the reasons set forth in paragraph 6(e) above.

19. The United States agrees not to seek additional criminal charges against the defendant or any of its officers or employees for their conduct prior to September 8, 1999 that the information describes. However, if the Court rejects this plea agreement, or otherwise refuses to accept the defendant's plea of guilty, or if defendant breaches this plea agreement by failing to comply with its obligations pursuant to the plea agreement, then the government is not bound by that promise and it can seek charges against those persons. Also, nothing in this plea agreement limits the United States in the prosecution of the defendant or any of its officers or employees for crimes they committed that are not known to the government at the time its authorized representative and attorney sign this plea agreement.

20. Defendant understands that its compliance with each part of this plea agreement extends throughout and beyond the period of its probation, and failure to abide by any term of the plea agreement is a violation of the agreement. It further understands that in the event it violates this agreement, the government, at its option, may move to vacate the plea agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this agreement, or to re-sentence the defendant. The defendant

understands and agrees that in the event that this plea agreement is breached by the defendant, and the government elects to void the plea agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement of such prosecutions.

21. Defendant, by its authorized representative, is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant, by its authorized representative, knowingly waives the right to appeal any sentence within the maximum provided in Title 18 or the manner in which that sentence was determined, in exchange for the concessions made by the United States in this plea agreement. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

22. Defendant, by its authorized representative and its attorney, acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this agreement, to cause defendant to plead guilty.

23. Defendant, by its authorized representative and attorney, agrees this plea agreement shall be filed and become a part of the record in this case.

24. Defendant's authorized representative and its attorney acknowledge they have read this agreement and carefully reviewed each provision. Defendant's authorized representative further acknowledges he understands and voluntarily accepts each and every term and condition of this agreement.

25. Defendant's authorized representative certifies he has attached to this plea agreement a true copy of the resolution of defendant's Board of Directors making him its authorized representative for all purposes of this case, including making this plea agreement and pleading guilty.

AGREED THIS DATE: _Oct. 28_, 2003

_Patrick J Fitzgerald by [illegible]_
PATRICK J. FITZGERALD
United States Attorney

_Sheldon Cohen_
SHELDON COHEN
Defendant's Authorized Representative

_Robert Kent_
ROBERT W. KENT, JR
Assistant United States Attorney

_Ann C. Tighe_
ANN C. TIGHE
Attorney for Defendant